UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
RIVERSIDE MARKETING, LLC,          :
                                   :
                Plaintiff,         :    02 Civ. 0349 (MBM)
                                   :    OPINION AND ORDER
      -against-                    :
                                   :
SIGNATURECARD, INC., TRANSMEDIA    :
NETWORK, INC., IDINE RESTAURANT    :
GROUP, INC., and G.E.              :
FINANCIAL ASSURANCE,               :
                                   :
                Defendants.        :
----------------------------------X

APPEARANCES:

DANIEL J. HALLORAN, ESQ.
(Attorney for Plaintiff)
Palmieri & Castiglione, L.L.P.
250 Mineola Blvd.
Mineola, NY 11501
(516) 248-9595

DAVID LEICHTMAN, ESQ.
MARAL N. KAZANJIAN, ESQ.
(Attorneys for Defendant iDine Reward Network,
Inc., formerly known as Transmedia
Network, Inc.)
Morgan, Lewis & Bockius, L.L.P.
101 Park Avenue
New York, NY 10178
(212) 309-6354

GREGORY T. CASAMENTO, ESQ.
(Attorney for Defendant SignatureCard, Inc.)
Lord, Bissell & Brook, L.L.P.
885 Third Avenue
New York, NY 10022
(212) 947-4700

MICHAEL B. MUKASEY, U.S.D.J.

Plaintiff Riverside Marketing, LLC ("Riverside"), sues
defendants SignatureCard, Inc. ("Signature") and iDine Rewards
Network, Inc., formerly known as Transmedia Network, Inc.,
("iDine"), alleging that the defendants breached a contract
formed between Riverside and Signature and unjustly enriched
themselves.  Riverside seeks damages from Signature for breach of
contract, fraud in the inducement, dilution of contract, and
unjust enrichment.  Riverside seeks damages from iDine for breach
of contract under the theories of assumption and ratification,
conversion, dilution of contract, third party benefit, and unjust
enrichment.  Signature and iDine have moved separately for
summary judgment under Fed. R. Civ. P. 56.  As explained more
fully below, summary judgment is granted, and the contract
against Signature and iDine are dismissed, because the clause
purporting to extend the contract in perpetuity subject only to
Riverside's unilateral right of termination, paradoxically makes
the contract terminable at will.  Further, for the reasons set
forth below, no claim for unjust enrichment can be maintained
against either Signature or iDine.

I.

Riverside is a New York limited liability company with
a place of business in New York that was founded in 1995 to

provide marketing services to Signature.  (Compl. ¶ 3; Signature Rule 56.1 Statement ¶ 7)  Signature, an Indiana corporation with a place of business in Illinois and a subsidiary of an Illinois corporation, operated a business called Dining a La Card ("DALC"), which allowed individual and corporate members to obtain discounts by dining at participating restaurants from 1993 until June 30, 1999. (Compl ¶ 4) To participate in DALC, a member would register a credit card and pay an annual fee in exchange for discounts and cash-back preferences at participating restaurants when that credit card was used. (Compl. ¶ 9) Restaurants that wished to participate in DALC signed an agreement with Signature, providing that Signature would buy dining credits, which then would be applied whenever a member used a registered card. (Signature Rule 56.1 Statement ¶¶ 4-5)

In a contract dated September 30, 1995, (the "Member Agreement"), Signature hired Riverside to market and promote DALC to potential members. (Compl. ¶¶ 1, 4, 8) Riverside was to receive a fixed portion of the initial membership fee for the enrollment and subsequent renewal for each new member it secured, as well as 2.5 percent of what the DALC members it secured spent at participating restaurants, up to a maximum of $75 per card for three years. (Compl. ¶ 10; Villano Dep. at 33) On September 30, 1996, the Member Agreement was modified to reduce the percentage of member revenues Riverside received from 2.5 percent to 1.5

percent. (Compl. ¶ 11; Villano Dep. at 35)

The Member Agreement states "This Agreement shall be governed in all respects by and construed in accordance with the laws of the State of Illinois." (Leichtman Decl., Ex. D ¶ 8) An addendum to the contract states that the:

> initial term of the Agreement shall be for three years and shall end on September 30, 1998.  Thereafter, the Agreement shall automatically renewed [sic] for additional three (3) year periods unless thirty (30) days prior to the end of a particular three year term [Riverside] provides written notification to Signature of the termination of this Agreement as of the end of the then current three year term.

(Leichtman Decl., Ex. D at Addendum ¶ 1) Additionally, the addendum states that Riverside is entitled to compensation only "so long as such customers and members are being serviced by Signature," (Leichtman Decl., Ex. D at Addendum ¶ 1), and Signature is required to "use its best efforts to prevent any other person or entity from soliciting such accounts for the purpose of offering Signature products . . ." (Leichtman Decl., Ex. D at Addendum ¶ 4)  Riverside and Signature struck out language in the Member Agreement addendum which would have allowed for the assignment of Signature's rights and obligations to a party acquiring DALC. (Leichtman Decl., Ex. D; Villano Dep. at 32)

The Member Agreement addendum was drafted by Riverside's attorney Brian R. Gallagher. (Villano Dep. at 22;

Gallager Dep. at 10) Ronald Fodrowski, a member of Riverside, and Brian Gallagher, Riverside's attorney, negotiated the terms of the Member Agreement. (Fodrowski Dep. at 24)

Riverside alleges that the Member Agreement could be terminated only by Riverside, because it had a three-year term that automatically renewed for an additional three years unless Riverside notified Signature it was terminating the Member Agreement within 30 days of the end of each three-year term. (Compl. ¶¶ 11-12; Fodrowski Dep. at 31). Riverside believed this automatic renewal was to continue infinitely and that Signature could never terminate the Member Agreement. (Fodrowski Dep. at 31; Villano Dep. at 32)

On July 9, 1997, Signature and Riverside entered into a letter agreement (the "Restaurant Agreement"), which provided that Riverside would acquire and manage restaurants for DALC in return for commission payments. (Cassamento Aff., Ex. G) The Restaurant Agreement contains no provision relating to its duration, termination, or choice of law. (Cassamento Aff., Ex. G) It also does not refer to the Member Agreement. (Cassamento Aff., Ex. G) The Member Agreement states that it cannot "be changed, altered, or affected in any manner except in writing, executed by both parties, which specifically refers to this Agreement and expressly recited the purpose of the modification." (Leichtman Decl., Ex. D, Addendum ¶ 7)

On March 17, 1999, iDine, a Delaware corporation with a principal place of business in Florida, agreed to buy certain assets from Signature, including DALC. (Compl. ¶¶ 1, 5, 12; Leichtman Decl. Ex. H) iDine operates a dining rewards program that purchases dining credits from participating restaurants and offers cash-back awards, frequent flier miles, and other benefits to members who register their credit cards and use those cards at participating restaurants. (Robitaille Aff. ¶ 2)

The agreement between Riverside and Signature was disclosed in the asset purchase agreement between iDine and Signature (the "Asset Purchase Agreement"), but it was specifically omitted from the asset purchase as an "excluded contract." (Compl. ¶ 13; Leichtman Decl., Ex. I ¶54) The asset purchase was completed on June 30, 1999, when Signature sold DALC to iDine, transferred all of DALC's operations to iDine, and ceased operating DALC. (Fodrowski Dep. at 66; Knoppel Dep. at 44, 51) Prior to the asset purchase, restaurants and members who participated in Signature's DALC could have been solicited by iDine for its program. (Villano Dep. at 53, 121) Clients and restaurants originally solicited by Riverside were solicited by iDine for its new diner's card program when it was time for such clients to renew their annual DALC membership. (Compl. ¶¶ 14, 16)

On June 29, 1999, Signature sent a letter to Riverside terminating their agreement as of 90 days after the date of the

letter. (Leichtman Decl., Ex. F, G; Villano Dep. at 88) On July 12, 1999, Riverside sent Signature a letter contesting the termination, stating "our contract will automatically renew every three years unless Riverside Marketing, LLC elects out of the contract in writing 30 days prior to the end of the contract period." (Casamento Aff. Ex. I) During the time between the asset purchase in June 1999 and September 1999, Riverside received payments due under its contract with Signature. (Villano Dep. at 92) Neither iDine nor Signature has made payments to Riverside since September 1999. (Compl. ¶ 15) Riverside did not attempt after September 1999 to recruit more accounts for Signature or iDine. (Fodrowski Dep. at 162) Riverside was paid in full for all commissions due as of September 1999. (Fodrowski Dep. at 162) Riverside never terminated its contracts with Signature nor consented to their alternation, amendment, transfer, or assignment. (Compl. ¶ 17)

Riverside alleges that on June 30, 1999, Signature and iDine entered into a services collaboration agreement whereby Signature sold a portion of its contractual rights and obligations under the agreement between Signature and Riverside; Signature agreed to perform marketing and promotional functions for the discount dining program created by iDine after it purchased DALC. (Compl. ¶ 18; Leichtman Decl., Ex. K at 3)

In the Asset Purchase Agreement, Signature agreed to

terminate its contract with Riverside prior to the closing date. (Robitaille Aff. ¶ 15; Leichtman Decl., Ex H at 36) Additionally, Signature agreed expressly to indemnify iDine for damages relating to all excluded contracts and liabilities, including the Riverside contract. (Robitaille Aff. ¶ 16; Leichtman Decl., Ex. H at 55) On June 30, 1999, iDine and Signature executed a waiver of asset purchase agreement, wherein Signature agreed to assume responsibility for any claims by independent contractors, including Riverside, for Signature's failure to terminate outstanding contracts. (Robitaille Aff. ¶ 17; Leichtman Decl., Ex. J)

After the asset purchase, Signature and iDine remained separate entities that continued to exist without the formation of a new corporation. (Robitaille Aff. ¶ 19) There is no continuity of ownership between iDine and Signature and no continuity of operations. (Robitaille Aff. ¶ 20)


II.

This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (2006), because the parties are of diverse citizenship and the amount in controversy exceeds the jurisdictional minimum.  Riverside is a New York limited liability company with its principal place of business in New York. (Compl. ¶ 3)  Signature is an Indiana corporation with its

principal place of business in Illinois. (Compl. ¶ 4) iDine is a
Delaware corporation with its principal place of business in
Florida. (Compl. ¶ 5)  Riverside seeks damages well in excess of
$75,000. (Compl. ¶¶ 28, 35, 40, 44, 49, 54, 59, 64, 69, 73, 77)


                              III.

        Signature and iDine move separately for summary
judgment as to all claims brought them by Riverside; thus their
motions, and Riverside's response to each, will be considered
separately despite Riverside's decision to respond to the motions
as if they were made jointly.

A. Signature's Motion for Summary Judgment

        Signature moves for summary judgment on Riverside's
breach of contract, dilution, and unjust enrichment claims on the
ground that the Member Agreement and Restaurant Agreement were
terminable at will, there is no cause of action for dilution of
contract under Illinois law, and a claim for unjust enrichment
does not lie when a contract governs the relationship between the
parties.

        1. <u>Breach of Contract Claim</u>

        Illinois law controls the contract dispute between
Riverside and Signature, because the Member Agreement states
"this Agreement shall be governed in all respects by and
construed in accordance with the laws of the State of Illinois"

                               8

(Leichtman Decl. Ex. D ¶ 8), and the parties' briefs cite Illinois law as to the contract claims.  (Pl.'s Memo. of Law at 15-22; Signature Memo. of Law at 10)  Such "implied consent . . . is sufficient to establish choice of law." <u>Tehran-Berkeley Civil & Envtl. Eng'rs</u> v. <u>Tippetts-Abbett-McCarthy-Stratton</u>, 888 F.2d 239, 242 (2d Cir. 1989).

Riverside argues the Member Agreement was of indefinite duration and terminable only by Riverside; thus, Signature breached the Member Agreement by purporting to terminate it.  The Member Agreement Addendum states "the Agreement shall automatically renewed [<u>sic</u>] for three (3) year periods unless within thirty (30) days prior to the end of a particular three year term [Riverside] provides written notification to Signature of the termination of this Agreement as of the end of the then current three year term." (Leichtman Decl. Ex. D Addendum ¶ 1) Such a contract is terminable at will as a matter of Illinois law, because it is of indefinite duration and one cannot determine with certainty when Riverside would terminate the agreement.

Under Illinois law, a contract that offers the possibility of perpetual duration is terminable at will by both parties. <u>See</u> <u>Jespersen</u> v. <u>Minnesota Mining and Mfg. Co.</u>, 183 Ill. 2d 290, 291 (1993).  This rule applies only if both the contract's duration and the manner in which the contract can be

terminated are uncertain.  See Id.; R.J.N. Corp. v. Connelly Food
Prod., Inc., 175 Ill. App. 3d 655, 660 (1st Dist. 1988) (holding
contract terminable at will when the clause read "this agreement
will remain in effect for as long as Connelly serves Rich's
customers," because it was impossible to ascertain when plaintiff
would decide to stop serving defendant's customers).  For a
potentially perpetual contract not to be terminable at will, the
trigger for termination must be an "objective event" that has the
"effect of making the contract sufficiently definite in
duration." Id. at 660; Jespersen, 183 Ill. 2d at 293 ("An
agreement without a fixed duration but which provides that it is
terminable only for cause or upon the occurrence of a specific
event is in one sense of indefinite duration, but is nonetheless
terminable only upon the occurrence of the specified event and
not at will.").  Further, under Illinois law, "perpetual
contracts are disfavored." Jespersen, 183 Ill. 2d at 295.
Similar to the contract in R.J.N. Corp, the Member Agreement did
not provide an objective event upon the occurrence of which the
contract would be terminated; the Member Agreement would remain
in effect for as long as Riverside decided to provide its
services to Signature.

        Further, contracts are more likely to be found
terminable at will when the duration clause gives one party the
opportunity to terminate, because it is "reasonable for the court

to conclude that if one of the parties could institute a termination-triggering event, then the contract should be considered terminable at will." <u>Yale Security, Inc.</u> v. <u>Freedman Sales, Ltd.</u>, No. 96 Civ. 6501, 1997 WL 51428, at *3 (N.D. Ill. Feb. 3, 1997).  "[T]here should be an even stronger presumption against [perpetual] contracts in the case of corporations and other artificial entities, since the existence of such entities often is of indefinite duration, and is not even limited by the bounds of human mortality." <u>Id.</u> at n. 6.  Because the Member Agreement is a contract between two artificial business entities and only one party is empowered to terminate the contract at a time that cannot be determined in advance, that agreement is terminable at will by both parties.

Despite Riverside's arguments to the contrary, it is irrelevant whether either or both parties intended the Member Agreement to last indefinitely and to be terminable only by Riverside.  <u>See</u> <u>First Commodity Traders, Inc.</u> v. <u>Heinold Commodities, Inc.</u>, 591 F. Supp. 812, 816 (N.D. Ill. 1984)("In the absence of a cognizable duration term, however, a contract will be terminable at will by operation of law, whether or not that was the parties' specific intent.").

Riverside's reliance on <u>Lake Forest Academy</u> v. <u>American Language Academy</u>, 777 F. Supp. 610 (N.D. Ill. 1991), for the proposition that a contract with a perpetual duration due to a

renewal clause is not terminable at will is also misplaced. <u>Lake Forest</u> differs from the present case because the <u>Lake Forest</u> contract would renew only if the plaintiff affirmatively renewed it in writing not less then six months prior to the contract's expiration, as opposed to automatic renewal under the Member Agreement, and the <u>Lake Forest</u> contract expressly allowed either party to terminate the contract if the other committed a material breach and did not correct it within 30 days, in contrast to the lack of any termination provision in the Member Agreement. <u>Id.</u> at 612. The <u>Lake Forest</u> provision allowing either party to terminate if a material breach was not corrected within 30 days can be read to have created a sufficiently certain contractual duration such that the contract was not terminable at will as a matter of law. <u>Id.</u> at 616-17. Under the Member Agreement, the contract renewed automatically with no limit on the number of renewals subject only to Riverside's decision to terminate for any reason or no reason. Further, <u>Lake Forest</u> was decided seven years before the Illinois Supreme Court decision in <u>Jespersen</u>, which held that a contract of possible perpetual duration is terminable at will if the duration and circumstances under which the contract can be terminated are indefinite. 183 Ill. 2d at 295-96. To the extent <u>Lake Forest</u> suggests a standard different from the one in <u>Jespersen</u>, it is <u>Jespersen</u> that controls.

Riverside's argument that it was defrauded by the

inclusion of an automatic renewal clause that Riverside believed granted it the right to unilateral termination, even though such a provision is contrary to Illinois law, is unavailing. Both parties to this contract are sophisticated business entities that were represented by counsel, so this court "must presume they knew the law when they entered into this agreement . . . . the rule that contracts of indefinite duration are terminable at will has long been followed in Illinois." <u>Jespersen</u>, 183 Ill. 2d at 295-96. <u>R.J.N. Corp.</u>, which holds that a clause stating the contract will endure until the plaintiff, and only the plaintiff, decides to stop performing is not a contract of a set duration, was decided by an Illinois court seven years before the Member Agreement was signed. 175 Ill. App. 3d at 660. Further, the addendum containing the automatic renewal clause and the choice of law provision was drafted by Riverside's attorney. (Villano Dep. at 22; Gallagher Dep. at 10) Riverside, and its counsel, have no excuse for not knowing that the Member Agreement was terminable at will as a matter of Illinois law.

Because the contract between Riverside and Signature is terminable at will as a matter of Illinois law, either party could terminate the agreement for any reason or no reason without committing a breach of contract. Accordingly, summary judgment is granted for Signature as to the breach of contract claim based upon the Member Agreement, because Signature was fully within its

rights to terminate the Member Agreement.

Additionally, Riverside argues that Signature breached the Restaurant Agreement, because (1) the Member Agreement and the Restaurant Agreement should be read together as a single agreement, and Signature had no right to terminate the Member Agreement, or (2) the Member Agreement clause addressing when subsequent agreements are to be considered an amendment to the terms of the Member Agreement should be viewed as ambiguous and that ambiguity should be read in Riverside's favor. (Pl.'s Memo. of Law at 12-13)

It is irrelevant for current purposes whether the Restaurant Agreement is an addendum to the Member Agreement or a separate contract. If the Restaurant Agreement is a part of the Member Agreement then it is terminable at will by either party for the aforementioned reasons. If the Restaurant Agreement is a separate contract it remains terminable at will as a matter of law, because it lacks any duration or termination provisions.

Because both the Member Agreement and the Restaurant Agreement were terminable at will by either party, Signature committed no breach when it terminated both agreements as of September 30, 1999, or when Signature failed to perform under the agreements after their termination.

2. <u>Dilution Claim</u>

Riverside alleges that Signature diluted the value of

the Member Agreement by violating the terms of the Member Agreement concerning the disclosure of confidential information. The term at issue reads, "Once [Riverside] provides a written list to Signature of members or customers to whom [Riverside] will be offering Signature's products, including but not limited to [DALC], Signature shall use its best efforts to prevent any other person or entity from soliciting such accounts for the purpose of offering Signature's product." (Pl.'s Memo. Of Law, Ex. A, Addendum ¶ 4) The clause does not prevent Signature from selling DALC to another party or restrict the transfer of information to iDine to enable it to sell iDine's product, which is distinct from DALC or any other Signature product.[1]

First, there is no Illinois state case that recognizes a cause of action for dilution of contract, and Riverside provides no case law supporting its position.

Second, even if Riverside intends such a claim to be based on a breach of contract, it fails. The confidentiality clause requires only that Signature use its best efforts to prevent others from soliciting those members solicited by Riverside for the purpose of participating in DALC or some other Signature product. Here, Signature did not allow anyone to solicit Riverside's accounts for the purpose of selling a

---

[1]Riverside does not argue that iDine's card constituted a "Signature product" after the asset purchase.

Signature product; iDine solicited Signature's former DALC members for the purpose of offering them an iDine product.  Such conduct is in no way proscribed by the Member Agreement and Signature was under no obligation to use its best efforts to prevent iDine from contacting its former members who had been enrolled by Riverside.

The Restaurant Agreement did not require that Signature use its best efforts to prevent others from soliciting participating restaurants for the purpose of offering another company's product.  Thus, breach of contract claims based on Signature having given the list of DALC restaurants solicited by Riverside to iDine must fail; Signature was under no obligation to keep the names of such restaurants confidential.

### 3. Unjust Enrichment Claim

Riverside alleges that Signature unjustly enriched itself when it sold DALC, including a list of former members and participating restaurants, some of which were solicited by Riverside, to iDine without paying Riverside additional compensation.

No choice of law analysis is necessary to weigh this non-contractual unjust enrichment claim, because both Illinois law, selected in the contractual choice-of-law provision, and the law of New York, the forum state and the situs of the alleged injury, impose the same requirements for pleading an unjust

16

enrichment claim in connection with a breach of contract claim.

See e.g., Clark-Fitzpatrick, Inc., v. Long Island R.R. Co., 70

N.Y.2d 382, 389, 531 N.Y.S.2d 653 (1987); Hartigan v. E & E

Hauling, Inc., 153 Ill. 2d 473, 497, 607 N.E.2d 165, 178 (1992)

("Because unjust enrichment is based on implied contract, where

there is a specific contract which governs the relationship of

the parties, the doctrine of unjust enrichment has no

application").  The court will use New York law to analyze the

claim. See Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998)

Under New York law, "[i]t is a well-established

principle that a simple breach of contract is not to be

considered a tort unless a legal duty independent of the contract

itself has been violated . . . . This legal duty must spring from

circumstances extraneous to, and not constituting elements of,

the contract." Clark-Fitzpatrick, Inc., 70 N.Y.2d 382 at 389.

Further, "[t]he existence of a valid and enforceable written

contract governing a particular subject matter ordinarily

precludes recovery in quasi contract for events arising out of

the same subject matter." Id. at 388; see also Goldman v. Met.

Life Ins. Co., 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583 (2005) (no

valid unjust enrichment claim when the disputed terms and

conditions fall within the contract).  Because the disputed

conduct falls squarely within the terms of the Member Agreement

and Restaurant Agreement, which set the terms of Riverside's

compensation, no claim for unjust enrichment lies.

Neither the Member Agreement nor the Restaurant Agreement, which govern the terms of compensation in the relationship between Signature and Riverside, states that Riverside should receive additional compensation in the event Signature ends DALC by selling its assets to a competitor. The agreements specify that Riverside is to receive as compensation a percentage of amounts charged on the credit cards of members it solicited at participating restaurants as well as a percentage of membership fees paid by members it enrolled. (Leichtment Decl. Ex D, Addendum ¶ 5) Additionally, Riverside was to be compensated with respect to any new Signature products that it sold to members. (Leichtment Decl. Ex D, Addendum ¶ 6) No clause in the contract provided for Riverside to be compensated in the event DALC ended or was sold to another company.

Riverside argues that Signature was required to buy out Riverside's contract by pro-rating the value of the life of the contract as an alternative to continuing the terms, because such a buy-out is required by industry custom. (see Pl.'s Memo. of Law at 15) However, a draft of the original Member Agreement contained a buy out provision, which the parties removed from their final contract; thus Riverside was aware of such an option and decided to undertake the risk of reaching a different bargain. (Pl.'s Memo. of Law, Ex. A ¶ 2) Riverside cannot revise

18

history and attempt to insert such a provision into the contract; it cannot achieve through litigation that which it did not achieve through negotiation.  Further, Riverside provides no evidence of a custom in the relevant industry of buying out a contract by pro-rating the value of the life of the contract.

Accordingly, summary judgment is granted for Signature dismissing all claims brought against it by Riverside.

B. iDine's Motion for Summary Judgment

iDine moves for summary judgment on the assumption of contract, ratification of contract, conversion of assets, dilution of contract, third party beneficiary, and unjust enrichment claims brought against it by Riverside, because iDine has no contractual or other relationship with Riverside and Signature terminated the Member Agreement and Restaurant Agreement, as required by the Asset Purchase Agreement.  New York law governs the disputes between iDine and Riverside, because neither party alleges that the law of another state controls and differs from New York law. <u>See</u>, <u>e.g.</u>, <u>Carroll</u> v. <u>LaBoeuf, Lamb, Green & MacRae LLP</u>, 392 F. Supp. 2d 621, n. 21 (S.D.N.Y. 2005).

1. <u>Ratification of Contract, Conversion of Assets, Dilution of Contract, and Third Party Beneficiary Claims</u>

iDine correctly points out that there is no New York case law recognizing independent causes of action for ratification and subsequent breach of contract when a principal-

agent relationship is not involved, dilution of contract, or liability to an unintended third-party beneficiary. Riverside provides no authority to suggest the existence or the elements of such alleged causes of action, nor could the court find any.

2. Assumption and Subsequent Breach of Contract

iDine and Riverside had no contractual relationship, and iDine at no time assumed or was assigned either the Member Agreement or the Restaurant Agreement. iDine was not a party to either agreement and had no rights or obligations under either; thus those agreements cannot bind iDine. See DeLine v. CitiCapital Commercial Corp., 24 A.D.3d 1309, 807 N.Y.S.2d 247, 248-49 (4th Dept. 2005); Polymer Trading, S.A.R.L. v. CIC-Union Europeenne Et Cie., 225 A.D.2d 482, 483, 640 N.Y.S.2d 32 (1st Dept. 1996).

Nor did iDine become a party to those agreements through its purchase of Signature's assets. Generally, a business that merely purchases the assets of another business is not liable for the seller's debts and obligations. Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 244-45, 464 N.Y.S.2d 437, 440 (1983); Cargo Partner AG v. Albatrans, Inc., 207 F. Supp. 2d 86, 93 (S.D.N.Y. 2002). There are four exceptions to that general rule: (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) there was a consolidation or merger of the seller and purchaser; (3) the purchaser is a continuation of the

seller; or (4) the transaction was entered into fraudulently to escape liability for such obligations. <u>Schumacher</u>, 59 N.Y.2d at 245.

First, iDine did not expressly or impliedly agree to assume the agreements when it purchased some of Signature's assets. It is undisputed that the Asset Purchase Agreement explicitly excluded the agreements from the asset purchase and, as a condition of the asset purchase, required Signature to terminate its contracts with Riverside prior to the closing date. (Leichtman Decl. Ex H at 36) In a waiver of the Asset Purchase Agreement, Signature agreed to assume responsibility for any claims by independent contractors for Signature's failure to terminate any outstanding contracts. (Leichtman Decl. Ex. J) When an agreement provides specifically that a purchaser is to assume liability only for certain claims, and the claim at issue is not within an enumerated category, there is no assumption of liability. <u>See</u> <u>Sweatland</u> v. <u>Park Corp.</u>, 181 A.D.2d 243, 245, 587 N.Y.S.2d 54 (4th Dept. 1992). Further, where an asset purchase agreement states expressly that the seller, rather than the purchaser, is to be responsible for certain obligations and liabilities, such obligations and liabilities cannot be found to have been expressly or impliedly assumed by the purchaser. <u>See</u> <u>Heights</u> v. <u>U.S. Elec. Tool Co.</u>, 138 A.D.2d 369, 370, 525 N.Y.S.2d 653 (2nd Dept. 1988).

Second, there was no consolidation or merger of iDine and Signature. After the asset purchase, they remained separate and distinct entities; no new entity was formed. (Robitaille Aff. ¶ 19) An asset purchase transaction can become a "de facto" merger, even if the parties do not effect a formal merger, if there is (1) continuity of ownership; (2) cessation of ordinary business operations and the dissolution of the selling corporation as soon as possible after the transaction; (3) assumption by the buyer of the liabilities ordinarily necessary for the uninterrupted continuation of the seller's business; and (4) continuity of management, personnel, physical location, assets, and general business operation. New York City Asbestos Litig. v. Chesterton, 15 A.D.3d 254, 256, 789 N.Y.S.2d 484, 486 (1st Dept. 2005). Continuity of ownership, which is essential to the finding of a de facto merger, exists "where shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation," id., such that the parties to the transaction "become owners together of what formerly belonged to each." Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 42 (2d Cir. 2003) (applying New York law). iDine did not buy Signature's assets for stock; thus there was no continuity of ownership. Further, Signature did not cease operating after the asset purchase and there was no continuity of management or operations. There was no de facto merger of

22

Signature and iDine such that iDine could be held liable for the debts and obligations of Signature.

Third, iDine is not a mere continuation of Signature, because Signature continues to exist to this day as a viable business entity. See Schumacher, 59 N.Y.2d at 245 (holding that "mere continuation" exception applies "where only one corporation survives the transaction; the predecessor corporation must be extinguished").

Fourth, the Asset Purchase Agreement was not entered into fraudulently. A transaction is not fraudulent if it is both an exchange for value and made in good faith. See Shamis v. Ambassador Factors Corp., 24 F. Supp. 2d 879, 898 (S.D.N.Y. 1999). Riverside does not allege that iDine's asset purchase was made for inadequate consideration or in bad faith.

Accordingly, summary judgment is granted for Signature dismissing the assumption of contract claim.

3. Conversion Claim

Riverside's conversion claim is nothing more than a recasting of its contract-based claims, and therefore is without merit. See, e.g., Richbell Info. Serv., Inc. v. Jupiter Partners, L.P., 309 A.D.2d 288, 306, 765 N.Y.S.2d 575 (1st Dept. 2003) (finding conversion claim in an action involving the alleged breach of a joint venture agreement duplicative and, thus, without merit because conversion is not "a wrong qualitatively

different form a mere breach of contract"); <u>Peters Griffin Woodward, Inc.</u> v. <u>WCSC, Inc.</u>, 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1st Dept. 1982) (an action for conversion cannot be maintained "where damages are merely being sought for breach of contract"); <u>Calcutti</u> v. <u>SBU, Inc.</u>, 223 F. Supp. 2d 517, 523 (S.D.N.Y. 2002) (holding plaintiff must show acts that were unlawful or wrong, as opposed to mere violations of contractual rights, to maintain a conversion claim).  The damages Riverside seeks for conversion are the same as those it seeks on its contract-based claim, and it makes no arguments distinct from those made in its claims that iDine ratified or assumed and then subsequently breached the Member Agreement and Restaurant Agreement. (<u>See</u> Compl. ¶¶ 55-64) Further, Riverside offers no evidence of a legal duty independent of the contract claims it alleges and no case law to support its allegations.

### 4. Unjust Enrichment Claim

Riverside's unjust enrichment claim against iDine also fails.  To state a claim for unjust enrichment, Riverside must "allege that [Riverside] conferred a benefit upon [iDine] and that [iDine] will obtain such benefit without adequately compensating plaintiff therefor." <u>Nakamura</u> v. <u>Fujii</u>, 253 A.D.2d 387, 390, 677 N.Y.S.2d 113 (1st Dept. 1998).  Riverside conferred no benefit on iDine, because Riverside performed no services for iDine. (Villano Dep. at 113)  It is undisputed that Riverside was

paid in full through September 30, 1999, the date when its
contract with Signature was terminated. (Fodrowski Dep. at 96-98,
162)  As discussed above, Riverside was not owed any further
compensation as a result of transactions undertaken by members it
secured for Signature once DALC ended.  It cannot claim iDine was
enriched at its expense when iDine asked former DALC members,
whose names it received from Signature, to sign contracts for
iDine's dining card program.

        *                    *                    *

        For the reasons set forth above, defendants' motions
for summary judgment are granted, and the complaint is dismissed.

                                        SO ORDERED:

Dated: New York, New York                Michael B. Mukasey
       April 4, 2006                      U.S. District Judge

                              25